# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ANTHONY MURRAY,

    Petitioner,

v.                                          Case No. 20-CV-185

GARY BOUGHTON,

    Respondent.

## DECISION AND ORDER GRANTING MOTION TO DISMISS AND DENYING PETITION FOR WRIT OF HABEAS CORPUS

Anthony Murray, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Murray was convicted of two counts of repeated sexual assault of a child and one count of first-degree sexual assault of a child. (Habeas Pet. at 2, Docket # 1.) He was sentenced to seventy-one years, consisting of forty-nine years of initial confinement followed by twenty-two years of extended supervision. (*Id.*) Murray alleges that his conviction and sentence are unconstitutional. The respondent moved to dismiss Murray's habeas petition on the grounds that each claim for relief is procedurally defaulted. (Docket # 12.) For the reasons stated below, the respondent's motion to dismiss is granted and the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

Murray was charged in January 2014 with multiple sexual assaults of his step-daughter "Violet." (*State v. Murray*, Appeal No. 2016AP481 (Wis. Ct. App. Nov. 14, 2017), Ex. 5 to Resp. Mot. to Dismiss, Docket # 13-5 at 2.) On December 31, 2013, Violet, then eleven, was in the care of a family friend, Serita Highshaw, while her mother, "Maxine,"

was out of town. (*Id.*)[1] Highshaw noticed that Violet was acting out, and asked her if something was wrong. (*Id.* at 2–3.) Violet initially denied that anything was wrong; however, later in the conversation, Highshaw asked Violet if someone had touched her. (*Id.* at 3.) Violet responded that a boy named Kendall had touched her. (*Id.*) Highshaw suggested to Violet that she might feel more comfortable writing a letter describing the incident rather than talking about it, so Violet wrote a letter regarding the incident with Kendall. (*Id.*) After discussing the letter, Highshaw asked Violet if anyone else had touched her, and Violet then wrote two letters describing being sexually assaulted by Murray. (*Id.*) Violet also verbally discussed details of the assaults with Highshaw over the next day and a half. (*Id.*)

Violet's description of the assaults included "penis contact to external genitalia, penis contact penetrating the vagina, finger contact to the external genitals, finger contact penetrating the vagina . . . external contact to the anus, [and] penetrating contact to the anus." (*Id.*) Violet stated the assaults occurred on many occasions in several different rooms of the two houses in which Murray had lived with her family. (*Id.*) In her first letter written to Highshaw, Violet stated that Murray had "raped" her on "Vine," referring to a residence located on North 24th Place in Milwaukee, near Vine Street, that Violet and her family moved into in June 2012. (*Id.*) Violet's family moved to a different residence on North 24th Place in April 2013 and Murray lived with them at this location from June 2013 until

---

[1] The Wisconsin Court of Appeals used pseudonyms for both the victim and her mother.

November 2013. (*Id.*) Violet described being sexually assaulted by Murray at this residence in November 2013 in her second letter. (*Id.*)

After discussing the sexual abuse with Violet, Highshaw told Maxine about the assaults, reported the assaults to the police, and took Violet to the Aurora Sinai Sexual Assault Treatment Center for an examination on December 31, 2013. (*Id.* at 3–4.) Violet was examined by a sexual assault nurse examiner, who prepared a report including statements by Violet that Murray had assaulted her since she was ten years old, with the last contact occurring on the day after Christmas. (*Id.* at 4.)

Murray was tried in June 2014. (*Id.*) At trial, Highshaw testified about how she discovered that Violet was being sexually abused and described Violet's letters. (*Id.*) Maxine testified that upon her return from Chicago on January 1, 2014, Violet told her about the abuse. (*Id.*) Maxine stated that Violet had explained that the abuse had started with Murray "trying to see her body," and that Violet then told Maxine "basically everything he [did] to her." (*Id.*) Maxine testified as to the time frames in which the family lived in each of the residences. (*Id.*)

Testimony regarding Violet's sexual assault examination was provided by a different sexual assault nurse examiner, as the nurse who examined Violet in December was no longer employed at the Aurora Sinai Sexual Assault Treatment Center at the time of trial. (*Id.*) Violet also testified at trial, detailing the types of contact Murray had with her and how

3

the assaults occurred at different times and in different rooms of each of the homes in which Murray lived with her family. (*Id.*)

A jury convicted Murray of all three counts. (*Id.*) With the assistance of counsel, Murray filed a Wis. Stat. § 809.30 postconviction motion requesting a hearing pursuant to *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (1979). (*Id.*) The trial court denied Murray's motion without a hearing and Murray appealed. (*Id.*) Murray argued two issues on appeal: (1) that the evidence presented at trial was insufficient to establish his guilt for any of the charged offenses and (2) that his trial counsel was ineffective for failing to object to out-of-court statements made by Violet, along with the testimony of Highshaw, Maxine, and the nurse, which were all based on those out-of-court statements, on the grounds that they were inadmissible hearsay. (*Id.* at 5–14.) The Wisconsin Court of Appeals rejected Murray's arguments and affirmed the judgment of conviction as well as the trial court's order denying Murray's motion for a *Machner* hearing. (*Id.* at 14.) Murray filed a petition for review of this decision to the Wisconsin Supreme Court, who denied his petition on March 13, 2018. (Ex. 8 to Resp. Mot. to Dismiss, Docket # 13-8.)

Murray then filed a *pro se* motion for postconviction relief pursuant to Wis. Stat. § 974.06, arguing that his postconviction counsel was ineffective for failing to challenge trial counsel's effectiveness, specifically, that trial counsel was ineffective for failing to ask for a continuance to investigate after learning about the Kendall letter. (*State v. Murray*, Appeal No. 2018AP1537 (Wis. Ct. App. Oct. 1, 2019), Ex. 12 to Resp. Mot. to Dismiss, Docket #

4

13-12 at 4–5.) The trial court denied Murray's § 974.06 motion without a hearing, and the court of appeals affirmed. (*Id.* at 5, 10.) Murray filed a petition for review, which the Wisconsin Supreme Court denied on January 14, 2020. (Ex. 15 to Resp. Mot. to Dismiss, Docket # 13-15.) Murray filed a timely petition for habeas corpus in this Court on February 6, 2020 (Docket # 1) and the respondent subsequently moved to dismiss the petition on the grounds of procedural default (Docket # 12).

## ANALYSIS

Murray alleges five grounds for relief in his habeas petition: (1) insufficient evidence to support the assaults; (2) ineffective assistance of trial counsel for failure to object to inadmissible hearsay; (3) ineffective assistance of trial counsel for failure to request a mistrial for the State's failure to produce the Kendall letter prior to trial; (4) ineffective assistance of trial counsel for failure to request an adjournment to investigate the Kendall letter; and (5) ineffective assistance of counsel for failure to impeach several witnesses. (Docket # 1.) The respondent argues that Murray has procedurally defaulted his claims in two ways: first, by failing to raise claims one and two at each level of the state court and second, by the state court's denial of claims three through five on adequate and independent state grounds. (Docket # 13.) I will address each argument in turn.

    1.    *Motion to Appoint Counsel*

As an initial matter, Murray does not respond to the respondent's motion to dismiss. Rather, he moves to appoint counsel, arguing that he previously had another inmate

5

assisting him with the litigation, but the inmate was moved to another facility. (Docket # 14.) Murray further argues that he "never had a chance to tell [his] side and if [he told his] side the Court wouldn't [sic] gave [him] 49 years." (*Id.*)

Pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A(a)(2)(B), I must find that the appointment of counsel would serve "the interests of justice" and that the petitioner is "financially eligible" if counsel is asked to represent an indigent petitioner. 18 U.S.C. § 3006A(a)(2). "[D]ue process does not require appointment of counsel for indigent prisoners pursuing . . . federal habeas relief." *Pruitt v. Mote*, 503 F.3d 647, 657 (7th Cir. 2007). Indigent civil litigants have no constitutional or statutory right to be represented by counsel in federal court. *Id.* at 649. Appointment of counsel for habeas petitioners is within the district court's discretion and is governed by standards similar to those followed in civil cases with plaintiffs proceeding *in forma pauperis*. *Wilson v. Duckworth*, 716 F.2d 415, 418 (7th Cir. 1983).

A threshold question is whether the litigant has attempted to obtain counsel himself or has been effectively precluded from doing so. *Pruitt*, 503 F.3d. at 654–55. Once the petitioner has established that his reasonable efforts to obtain counsel were unsuccessful the court conducts "a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself." *Id.* at 655. The inquiries are intertwined; "the question is whether the difficulty of the case—factually and legally— exceeds the particular [party's] capacity as a layperson to coherently present it to the judge or jury himself." *Id.* Whether a party appears competent to litigate his own claims, given

6

their difficulty, includes consideration of all parts of litigation, including evidence gathering and responding to motions. *Id.* Regarding the party's ability to litigate the case, the court should review "whatever relevant evidence is available on the question," including pleadings and communications from the party. *Id.*

Murray states that he contacted four attorneys, who all declined to take his case. (Docket # 14 and Docket # 14-1.) Having satisfied the threshold inquiries, I must determine whether appointment of counsel would serve the interests of justice. In determining whether the interests of justice will be served by the appointment of counsel in a habeas case, I consider the difficulty of the case and the petitioner's ability. Murray challenges his conviction on the grounds of insufficient evidence and ineffective assistance of counsel. (Docket # 1.) The respondent has filed a motion to dismiss Murray's petition on the grounds of procedural default. I am not convinced, however, that appointment of counsel would serve the interests of justice in this case. Although the respondent filed a procedural motion, the arguments are common and cite to well-established law. This is not to say that counsel would not be helpful to Murray. Murray is in custody and is not a lawyer. But this is true of every prisoner who files a habeas petition. Yet, I cannot appoint counsel for every petitioner or in every case in which a motion to dismiss based on procedural default is filed.

Further, in this case, Murray appears from his multiple filing to have a sufficient ability to communicate in writing. Murray was able to file a § 974.06 motion, a brief before the Wisconsin Court of Appeals, and a petition for review to the Wisconsin Supreme Court

7

*pro se*. For these reasons, find that the interests of justice do not require the appointment of counsel in this case.

      2.      *Failure to Exhaust (Claims One and Two)*

The respondent argues that Murray procedurally defaulted claims one and two by failing to present the issues to the Wisconsin Supreme Court as federal constitutional claims. A federal court may not entertain a petition from a prisoner being held in state custody unless the petitioner has exhausted his state remedies. 28 U.S.C. § 2254(b)(1)(a). A claim is not considered exhausted if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). With some exceptions, a petition for writ of habeas corpus should be dismissed if state remedies have not been exhausted as to any one of the petitioner's federal claims. *See Rhines v. Weber*, 544 U.S. 269, 277–78 (2005); *Cruz v. Warden of Dwight Corr. Ctr.*, 907 F.2d 665, 667 (7th Cir. 1990). The petitioner must invoke one complete round of the normal appellate process, including seeking discretionary review before the state supreme court. *McAtee v. Cowan*, 250 F.3d 506, 508–09 (7th Cir. 2001).

A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim. *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). A procedural default will bar federal habeas relief unless the petitioner can demonstrate both cause for and prejudice

8

stemming from that default or he can establish that the denial of relief will result in a miscarriage of justice. *Id.* (citing *Wainwright v. Sykes*, 433 U.S. 72, 86–87 (1977)).

The respondent argues that Murray has not exhausted his federal claim as required by 28 U.S.C. § 2254(b)(1)(A). Though Murray has exhausted the state court appellate process—that is, he has invoked one complete round of the appellate process, including petitioning for discretionary review at the Wisconsin Supreme Court as he was required to do, *McAtee*, 250 F.3d at 508–09—the respondent argues that Murray did not fairly present his constitutional claims in grounds one and two to each court, *see Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). For a constitutional claim to be fairly presented to a state court, both the operative facts and the controlling legal principles must be submitted to that court. *Id*. Four factors bear upon whether the petitioner has fairly presented the claim in state court: (1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation. *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001).

In ground one of his habeas petition, Murray alleges that the evidence was insufficient to establish whether the assaults attributed to Murray actually occurred. (Docket # 1 at 6.) Murray alleges that his conviction relied on the uncorroborated testimony of the

9

victim and the victim's testimony was inconsistent and contradictory. (*Id.*) He alleges that the state failed to prove beyond a reasonable doubt where and when the alleged assaults occurred. (*Id*.at 7.) The respondent argues that Murray did not present his sufficiency of the evidence claim to the Wisconsin Supreme Court as a constitutional claim; rather, he presented the claim as a matter of State law—that the State failed to properly corroborate the victim's testimony, contrary to Wisconsin law. (Docket # 13 at 7–14.)

Considering the four factors articulated in *Wilson*, I find that Murray did not fairly present his sufficiency of the evidence ground as a constitutional claim before the Wisconsin Supreme Court. For sufficiency of the evidence claims, *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979), establishes the relevant constitutional standard. While Murray did cite to *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757–58 (1990) in his petition for review, a case which pronounces a state law standard that is the functional equivalent to *Jackson*, (Ex. 6 to Resp. Mot. to Dismiss, Docket # 13-6 at 5), he does not otherwise engage in any constitutional analysis. Rather, Murray frames the issue in terms of whether, under Wisconsin law, sexual assault cases require corroboration of a victim's testimony in certain cases in order for the conviction to stand. (*Id.* at 5–10.) Murray cites to various Wisconsin cases that he argues illustrates the "confusion" in Wisconsin case law as to whether "there truly is a corroboration requirement when testimony of a complainant bears evidence of unreliability, or whether the existence of corroboration is merely a factor to consider when determining whether the evidence was sufficient to convict." (*Id.* at 10.) Murray argues the

10

court should accept his petition for review to address whether there is, in fact, a corroboration requirement in sexual assault cases, and if so, under what circumstances. (*Id.* at 11.) However, "[s]imply asserting that the state has failed to prove guilt beyond a reasonable doubt does not automatically raise a federal *Jackson v. Virginia* claim." *United States ex rel. Jackson v. Page*, 972 F. Supp. 1140, 1151 (N.D. Ill. 1997). Thus, Murray has procedurally defaulted ground one of his habeas petition.

In ground two, Murray alleges that his trial counsel was ineffective for failing to object to inadmissible hearsay; specifically, the testimony of the victim's mother, Highshaw, and the nurse, as well as reports and letters containing the victim's statements. (Docket # 1 at 7.) The respondent argues that Murray procedurally defaulted ground two because he presented the hearsay issue to the Wisconsin Supreme Court as a matter of state evidentiary law, not as a constitutional issue. (Docket # 13 at 14–15.) The respondent is correct. In his petition for review, Murray argues that the court should grant review to determine whether the admission of hearsay at trial was authorized by the residual exception to the hearsay requirement found in Wis. Stat. § 908.03(24). (Docket # 13-6 at 16.) While Murray presented the evidentiary issue as an ineffective assistance of trial counsel claim in his brief to the Wisconsin Court of Appeals (Ex. 2 to Resp. Mot. to Dismiss, Docket # 13-2 at 34–46), Murray clearly does not present the issue under this framework before the Wisconsin Supreme Court (Docket # 13-6 at 19 ("We request that this court grant review to reexamine

11

the appropriateness of the liberal use of the residual hearsay exception in child sexual assault cases.").) For this reason, I find Murray procedurally defaulted ground two.

### 3. Adequate and Independent State Law Grounds

In grounds three, four, and five, Murray alleges that his trial counsel was ineffective in three separate ways: (1) by failing to request a mistrial for the State's failure to produce the Kendall letter before trial; (2) by failing to request an adjournment to investigate the Kendall letter; and (3) by failing to impeach the victim, her mother, and Highshaw. (Docket # 1 at 8–10.) The respondent argues that Murray procedurally defaulted these three grounds because the Wisconsin Court of Appeals rejected his arguments on adequate and independent state law procedural grounds. (Docket # 13 at 20–33.)

When a "state court does not reach a federal issue because of a state procedural bar, the issue cannot be raised" in a federal writ for habeas corpus unless the petitioner can show cause and prejudice. *Jenkins v. Nelson*, 157 F.3d 485, 491 (7th Cir. 1998) (citing *Wainwright*, 433 U.S. at 90–91). In order to conclude that a petitioner has procedurally defaulted a claim due to an adequate and independent state ground, this Court "must be convinced that the last state court to consider the question actually relied" on a procedural ground "as the basis for its decision." *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000) (internal citations omitted). The state court's reliance on a procedural rule therefore must be explicit. *See id*. Furthermore, "the state's procedural rule must be both 'firmly established and regularly followed,'" applied consistently and frequently, and will not be an adequate ground for

12

procedural default "if the prisoner 'could not fairly be deemed to have been apprised of its existence' at the time [he] acted." *Id.* (internal citations omitted).

As to grounds three and five, Murray failed to raise the issues before the trial court, instead raising the issues for the first time in his brief before the court of appeals. (Docket # 13-12 at 5–6.) The court of appeals clearly declined to address grounds three and five on the basis of forfeiture (Docket # 13-12 at 5–6); thus, I find that the state court actually relied on the procedural default as an independent basis for its decision. I also find that the forfeiture rule is an adequate state ground. Under Wisconsin law, "[i]t is a fundamental principle of appellate review that issues must be preserved at the circuit court. Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal." *State v. Huebner*, 2000 WI 59, ¶ 10, 235 Wis. 2d 486, 492, 611 N.W.2d 727, 730.

As to Murray's claim that postconviction counsel was ineffective for failing to argue that trial counsel was ineffective for not seeking a continuance to further investigate the Kendall letter (ground four of his habeas petition), the court of appeals rejected this claim on multiple grounds. First, the court of appeals found that Murray's motion was "conclusory and speculative" as he failed to show what investigation into the Kendall letter would have revealed or how it would have altered the case. (Docket # 13-12 at 7–8.) Second, the court of appeals found that Murray did not reference or analyze the issue under the "clearly stronger" standard and that this, "in and of itself, defeats his claims premised on the alleged

13

ineffective assistance of postconviction counsel" because the court will not "read into a § 974.06 motion" allegations not within the motion. (*Id.* at 8–9.) Finally, the court of appeals rejected Murray's claim because the Kendall letter was discussed and examined at trial and both the victim and Highshaw's testimony established that the Kendall letter referred to a separate incident; thus, "Murray cannot show that it would have been clearly stronger for postconviction counsel to argue that trial counsel provided ineffective assistance for failing to seek a mid-trial adjournment to investigate the letter." (*Id.* at 9.)

The court of appeals clearly rejected Murray's argument on the procedural ground that Murray failed to raise the issue under the correct procedural standard before the trial court. As the court of appeals stated, it could not "read into" the § 974.06 motion an argument Murray failed to make. I find that this, in and of itself, is an adequate and independent state ground to support procedural default; thus, I will not address whether the fact that Murray's motion was "conclusory and speculative" is another adequate and independent state ground for procedural default.

I further note that while the court of appeals did address the merits of Murray's argument, it did so in an alternative holding, stating "[i]n any event, such an argument would have failed because it rests on the incorrect premises that the Kendall letter contained a new revelation and suggested an alternative actor for Murray's assaults of Violet." (*Id.*) "A state court may reach the merits of a federal claim in an alternative holding; if it does so explicitly, then the independent and adequate state ground doctrine curtails reconsideration

14

of the federal issue on federal habeas." *Moore v. Bryant*, 295 F.3d 771, 775 (7th Cir. 2002) (internal quotation and citation omitted). For these reasons, I find Murray procedurally defaulted grounds three, four, and five.

### 4. *Exceptions to Procedural Default*

To overcome procedural default, the petitioner must either demonstrate both cause for and prejudice stemming from his procedural default or be able to establish that the denial of relief will result in a miscarriage of justice. *Lewis*, 390 F.3d at 1026 (citing *Wainwright*, 433 U.S. at 86–87). The cause and prejudice exception requires that the petitioner show "that some type of external impediment prevented [him] from presenting his federal claim to the state courts" to prove cause. *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)). In order to establish prejudice, the petitioner must show that "the violation of [his] federal rights 'worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 1026 (citing *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). The miscarriage of justice exception requires that the petitioner "show that he is actually innocent of the offense for which he was convicted, i.e., that no reasonable juror would have found him guilty of the crime but for the error(s) that he attributed to the state court." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327–29 (1995)).

Murray does not argue cause for and prejudice stemming from his procedural default, nor does he argue that he is actually innocent of the offenses for which he was

15

convicted. Therefore, Murray has not met either exception to procedural default. The motion to dismiss is granted and the case is dismissed.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 and n.4).

When issues are resolved on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Each showing is a threshold inquiry; thus, the court need only address one component if that particular showing will resolve the issue. *Id.* at 485.

16

Reasonable jurists could not debate that Murray is not entitled to habeas relief. Thus, I will deny Murray a certificate of appealability. Of course, Murray retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that the petitioner's motion to appoint counsel (Docket # 14) is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 15th day December, 2020.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge